**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MELVIN MARINKOVIC, | ) | CASE NO: 1:19CV1710 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| CANDICE HAZELWOOD, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER** |
| | ) | |

This matter is before the Court on consent of the parties pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1.  (Doc. No. 24.)  Currently pending before the Court are Defendant Candice Hazelwood's Motion for Summary Judgment and Plaintiff Melvin Marinkovic's Motion for Partial Summary Judgment.  (Doc. Nos. 80, 86.)  Plaintiff filed a Response in Opposition to Defendant's Motion for Summary Judgment, and Defendant filed a Reply in Support.  (Doc. Nos. 96, 97.) Defendant also filed a Response in opposition to plaintiff's Motion for Summary Judgment.  (Doc. No. 90.)

For the reasons that follow, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Partial Summary Judgment is DENIED.

1

## I. Factual Background

On July 27, 2018, Plaintiff Melvin Marinkovic ("Marinkovic" or "Plaintiff") was injured when his vehicle was hit by another vehicle.  (Doc. No. 39-1 at 5-6.)  Plaintiff alleges the incident was a result of the negligence of Defendant Candice Hazelwood ("Hazelwood" or "Defendant"), who owned the vehicle that struck his vehicle.  (*Id.* at 3-4.)  Defendant asserts that although she co-signed the loan which secured the vehicle, she did not own it.  (Doc. No. 80 at 4.)  The driver of the vehicle that struck Plaintiff is not a party to this lawsuit.

## II. Procedural History

On July 29, 2019, Plaintiff filed a Complaint against Defendant, alleging negligence and gross negligence, arising from an auto accident involving Marinkovic and a car allegedly owned by Hazelwood.  (Doc. No. 1.)

On May 29, 2020, Defendant filed a Motion to Dismiss Plaintiff's Complaint, based on the assertion that she was neither the driver nor a passenger in the car at the time of the accident.  (Doc. No. 36.)   In response, Plaintiff sought to Amend his Complaint, withdrawing his previous allegations, and instead alleging negligent entrustment, negligent infliction of emotional distress, and intentional infliction of emotional distress.  (Doc. No. 39.)

On July 22, 2020, the Court held a telephone conference with the parties.  (Doc. No. 46.)  In response to Plaintiff's concerns about service, the Court ordered that "[a]ll future motion practice will be served both by email and by ordinary mail."  (*Id.*.)

On July 31, 2020, the Court granted Plaintiff's Motion in part, permitting him to withdraw the claims of negligence and gross negligence, and substitute claims of negligent entrustment and negligent infliction of emotional distress.  (Doc. No. 47.)  The Court also granted the Plaintiff's

2

motion to extend discovery deadlines, ordering that all non-expert Discovery be completed on or before October 1, 2020 and all expert discovery be completed on or before November 1, 2020. (*Id*.) Defendant's Motion to Dismiss Plaintiff's Complaint was dismissed as moot. (*Id*.)

On September 30, 2020,[1] Plaintiff filed a Second Motion to Extend Discovery Deadlines. (Doc. No. 62.) On October 8, 2020, Defendant filed a Response in opposition. (Doc. No. 53.) On October 23, 2020, Plaintiff filed a supplement containing pages of previously filed motions. (Doc. No. 67.) This Motion was denied by the Court on November 5, 2020. (Doc. No. 70.)

On October 5, 2020,[2] Plaintiff filed a motion requesting that the Court re-evaluate the management track of case as complex and extend deadlines proper for the new track. (Doc. No. 56.) On October 8, 2020, Defendant filed a Response in opposition. (Doc. No. 54.) On October 15, 2020, Plaintiff filed a Reply in support of his motion. (Doc. No. 59.) This motion was denied by the Court on November 5, 2020. (Doc. No. 70.)

On December 8, 2020,[3] Plaintiff filed a Motion to Compel Discovery. (Doc. No. 77.) On

---

[1] This document was filed by mail, and is dated September 30, 2020. (Doc. No. 62 at 1.) The envelope is postmarked October 17, 2020. (Doc. No. 62-1.) It was received by the clerk's office and docketed on October 21, 2020. The Court was informed by the Plaintiff at the telephonic status conference held on October 2, 2020 that he had recently filed such a motion, and the copy docketed by the clerk may have been re-sent in response to the Court's October 14, 2020 Order. The Defendant received a courtesy copy via email, and electronically filed a response before the motion was docketed. The Court will deem this motion filed on September 30, 2020.

[2] This document was filed by mail, and is dated October 5, 2020. (Doc. No. 56 at 20.) It was received by the clerk's office and docketed on October 13, 2020. The Defendant received a courtesy copy via email, and electronically filed a response before the motion was docketed. The Court will deem this motion filed on October 5, 2020.

[3] This document was filed by mail, and is dated December 8, 2020. (Doc. No. 77 at 23.) It was received by the clerk's office and docketed on December 14, 2020. The Court will deem this motion filed on December 8, 2020.

December 17, 2020, Defendant filed a Reply in Opposition.  (Doc. No. 79.)

On December 8, 2020,[4] Plaintiff filed a Motion to Submit Answers to Discovery into Court. (Doc. No. 78.)

On December 22, 2021, Defendant filed a Motion for Summary Judgment.  (Doc. No. 80.)

On December 29, 2021, Plaintiff filed a Partial Motion for Summary Judgment.[5]  (Doc. No. 86.)  Defendant filed a Reply in Opposition.  (Doc. No. 90.)

On January 9, 2021,[6] Plaintiff filed a Motion to Strike Defendant's Motion for Summary Judgment, or, in the alternative, Motion for Extension of Time to Oppose Summary Judgment by 30 days.  (Doc. No. 91.)  He also filed a Declaration in support of that motion.  (Doc. No. 92.) Defendant filed Responses in Opposition to both the Motion and the Declaration.  (Doc. Nos. 93 & 94.)  On February 2, 2021, the Court denied Plaintiff's Motion to Strike Defendant's Motion for Summary Judgment, and granted his Motion for Extension of Time to Oppose Summary Judgment by 30 days.  (Doc. No. 95.)

On February 16, 2021, Plaintiff filed a Response in Opposition to Defendant's Motion for Summary Judgment.  (Doc. No. 96.)  On February 24, 2021, Defendant filed a Reply in Support. (Doc. No. 97.)

---

[4] This document was filed by mail, and is dated December 8, 2020.  (Doc. No. 78 at 6.)  It was received by the clerk's office and docketed on December 14, 2020.  The Court will deem this motion filed on December 8, 2020.

[5] This document was filed by mail, and is dated December 29, 2020.  (Doc. No. 86 at 9.) It was received by the clerk's office and docketed on December 30, 2020.  The Court will deem this motion filed on December 29, 2020.

[6] This document was filed by mail, and is dated January 9, 2021.  (Doc. No. 91 at 20.)  It was received by the clerk's office and docketed on January 29, 2021.  The Court will deem this motion filed on January 9, 2021.

The parties' motions are now ripe and ready for the Court's consideration.

### III. Standard of Review

Summary judgment is governed by Federal Rule of Civil Procedure 56, which provides

A party may move for summary judgment, identifying each claim or defense or the part of each claim or defense on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a). The purpose of summary judgment is to determine if there is a need for a trial due to genuine factual issues that require resolution. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). If, based on all the available proof, a reasonable jury could only find for one party at trial, then a trial is unnecessary and the Court may enter a judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986). *See also Barrett v. Lucent Technologies,* 36 F. App'x 835, 840 (6th Cir. 2002) ("Summary judgment is appropriate when there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law.").

The moving party has the initial burden of demonstrating there is no genuine issue of material fact. The moving party may meet this burden by establishing the non-moving party lacks evidence to support an essential element of their case. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). Conversely, when the moving party carries the burden of proof for a claim, they may establish no genuine issue of material fact by setting forth evidence which would result in a directed verdict at trial. *See Calderone v. U.S.,* 799 F.2d 254, 259 (6th Cir. 1986). *See also Kassouf v. U.S. Liability Co.,* No. 1:14CV2656, 2015 WL 5542530 at *3 (N.D. Ohio Sept. 18, 2015).

Once the moving party meets this burden, the non-moving party must then present evidence which establishes genuine factual issues which require a trial. *Celotex Corp.,* 477 U.S. at 325. The

non-moving party may not rest "upon the mere allegations of their pleadings nor upon general allegations that issues of fact exist." *Shell v. Lautenschlager,* No. 1:15CV1757, 2017 WL 4919206 at *1 (N.D. Ohio Oct. 31, 2017). The non-moving party must support their position with "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). *See also Celotex Corp.*, 477 U.S. at 324. The non-moving party must "present more than a scintilla of evidence" to support their position. *See Garza v. Norfolk S. Ry. Co.,* 536 F. App'x 517, 519 (6th Cir. 2013).

When reviewing the evidence, the court must view all the evidence and inferences in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). If after analyzing the body of evidence presented by both parties, the Court finds no reasonable jury could find in favor of the non-moving party, summary judgment must be entered. *Kassouf,* 2015 WL 5542530 at *3.

However, an unusual situation is created when cross motions for summary judgment are filed. As the Sixth Circuit has explained, the reviewing court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *B.F. Goodrich Co. v. U.S. Filter Corp.,* 245 F.3d 587, 592 (6th Cir. 2001) (citing *Taft Broadcasting Co. v. United States,* 929 F.2d 240, 241 (6th Cir. 1991).). Accordingly, "if it is possible to draw inferences in either direction, then both motions for summary judgment should be denied." *Champion Foodservice, LLC v. Vista Food Exchange, Inc.,* No. 1:13-cv-1195, 2016 WL 4468001 at *4 (N.D. Ohio Aug. 24, 2016) (citing *B.F. Goodrich Co.,* 245 F.3d at 592-593).

6

**IV.  Law and Analysis**

In Defendant's Motion for Summary Judgment, she asserts that Summary Judgment is proper because, as a matter of law, no liability attaches to her for the alleged negligence of the driver of the car, her daughter, Holly Hazelwood (the "Driver").  (Doc. No. 80 at 2.)  She asserts that the car involved in the accident was not owned by Defendant, at the time of the automobile accident, and was, instead personally owned by the Driver, who is not a party to this suit.  (*Id*.)  She also asserts summary judgment on both claims is proper regardless of the issue of ownership.  Defendant asserts that Plaintiff's claim of negligent entrustment is unsupported by any evidence that the Driver was unfit, and offers testimony, via affidavit, that she was not aware of any prior accidents for the Driver and believed that the Driver was a qualified and competent driver.  (*Id*. at 4.)  She also argues that the evidence in the record does not support any claim for negligent infliction of emotional distress, because Defendant was neither a bystander nor "directly involved" in the accident.[7]  (*Id*. at 3.)

In Plaintiff's Motion for Partial Summary Judgment, he acknowledges that "absence of ownership of the entrusted vehicle is a complete defense," but asserts that because the Defendant asserted in an affidavit in support of her first Motion for Summary Judgment that she was the owner of the car involved in the accident, the Court should either invoke judicial estoppel to rule that Defendant was the owner of the car, or hold an evidentiary hearing to resolve the apparent conflict of evidence.  (Doc. No. 86 at 2-3.)  He seeks Summary Judgment of the issue of negligent entrustment, but offers no admissible evidence in support of that claim.  (*Id*.)  He also opposes

---

[7]     Defendant also addresses the claim of intentional infliction of emotional distress, which was included in Plaintiff's Proposed Amended Complaint.  (Doc. No. 39.)  However, Plaintiff's Motion for Leave to Amend to include a claim of Intentional Infliction of Emotional Distress was denied in this Court's July 31, 2020 Order.  (Doc. No. 47.)

7

Defendant's Motion for Summary Judgment on the grounds that "where a party said one thing in an early affidavit, and then testified to the opposite in the summary judgment option," the Ohio Supreme Court has ruled that "the court may not grant summary judgment."  (Doc. No. 96 at 1.)

**A.      Negligent Entrustment**

Defendant moves for Summary Judgment on Plaintiff's claim of negligent entrustment, which is based on the assertion that Defendant owned the car operated by the Driver at the time of the accident giving rise to this case.  (Doc. No. 80 at 2-3.)  Liability for negligent entrustment of a motor vehicle is recognized in Ohio Law:

> The owner of a motor vehicle may be held liable for an injury to a third person upon the ground of negligence if the owner knowingly, either through actual knowledge or through knowledge implied from known facts and circumstances, entrusts its operation to an inexperienced or incompetent operator whose negligent operation results in the injury.

*Gulla v. Straus,* 154 Ohio St. 193, 198 (1950); *see also Safeco Ins. Co. of Am. v. White*, 122 Ohio St. 3d 562, 571 (2009) (plaintiff must show that the vehicle owner's negligent entrustment caused the plaintiff's injury); *Rieger v. Giant Eagle, Inc.*, 157 Ohio St. 3d 512, 518 (2019).  The plaintiff must show that the vehicle was driven with the owner's permission and authority; the entrusted driver was an incompetent driver; and at the time of the entrustment the owner knew "or had knowledge of such facts and circumstances as would imply knowledge," that the driver was unlicensed or incompetent of unqualified to operate the vehicle.  *Id.; see also Cox v. Dubois*, 16 F. Supp. 2d 861, 865-66 (S.D. Ohio 1998); *Williams v. Eclipse Motor Lines, Inc.*, 145 Ohio St. 467 (Ohio 1945).  The failure to prove any one of these elements is fatal to a claim of negligent entrustment.  *Rieger*, 157 Ohio St. 3d at 518.

Defendant argues that, "even setting the ownership issue aside,"[8] she is still entitled to summary judgment on the negligent entrustment claim because the Plaintiff has failed to provide evidence in support of two essential elements.  (Doc. No. 80 at 4.)  She asserts that the Driver is a licensed, competent driver.  (*Id*.)  The Defendant also asserts she was not aware of any prior accidents for the Driver and has no reason to believe the Driver was not a qualified and competent driver.  (*Id*.)  She asserts summary judgment is proper because Plaintiff lacks evidence to support these essential elements of his claim.  (*Id.*)  In contrast, Defendant offers affidavit testimony that she did not know the Driver was an incompetent or unskilled operator, and discovery responses which affirm that she had no reason to believe the Driver was unfit to drive a car.  (Doc. No. 82.)  She offers discovery responses indicating that the Driver paid for her own insurance, and therefore even if the policy did not have a safe driver discount, there is no evidence that Defendant was aware of that fact.  (Doc. No. 97-1.)

To survive Summary Judgment on the claim of negligent entrustment, Plaintiff must offer some evidence that Defendant had knowledge of the driver's incompetence, inexperience, or reckless tendency as an operator or that Defendant, in the exercise of ordinary care, should have known thereof from facts and circumstances with which she was acquainted.  *Williamson v. Eclipse Motor Lines, Inc.*, 145 Ohio St. 467, 472 (1945).  Assuming, *arguendo,* that the Driver had received traffic citations which effected her insurance premiums, this is not sufficient to establish incompetence for the purposes of negligent entrustment.  Ohio courts have held that "[i]solated incidents of failing to obey traffic laws * * * generally will not establish incompetence" for purposes of negligent entrustment claims.  *M.M. v. M.F.*, No. 108957, 2020 -Ohio- 5082, 2020 WL 6342653

---

[8]        The issue of ownership is discussed in section IV.D, below.

9

at *3 (Ohio Ct. App. 8 Dist. Oct. 29, 2020); quoting *Hoff v. Minder*, No. 13CA31, 2014 -Ohio- 3491, 2014 WL 3943028 at *3 (Ohio Ct. App. 4 Dist. Aug. 6, 2014) ("two prior traffic citations were insufficient to establish that owner of vehicle had knowledge that driver was incompetent or unqualified to operate the vehicle"); *see also Marcum v. White*, No. 1928, 1990 WL 127033 (Ohio Ct. App. 4 Dist. Aug. 22, 1990) (prior citation for driving a vehicle while under the influence of alcohol while he was a minor was insufficient to establish incompetence when this was the driver's first traffic ticket and more than a year old); *Cincinnati Ins. Co. v. Watson*, No. 88AP-898, 1989 WL 18172 at *1 (Ohio Ct. App. 10 Dist. Mar. 2, 1989) (multiple driving citations by 17 year-old child including a citation for DWI and a subsequent license suspension, as well as a three-day incarceration do not "rise to the level of incompetence, inexperience, or reckless tendencies" that would establish negligent entrustment); *Maeder v. Hale*, No. 10CA 9925, 2012 WL 8708, 2012 Ohio 2 (Ohio App. 9 Dist. Jan. 3, 2012) (affirming summary judgment to woman who entrusted her vehicle to her granddaughter's boyfriend despite him having two successive speeding tickets, a poor driving record, and a suspended license); *Dowe v. Dawkins*, No. 93AP 860, 1993 WL 531293, at *2 (Ohio App. 10 Dist. Dec. 23, 1993) (affirming summary judgment to mother who entrusted her vehicle to daughter who was involved in a prior car accident, had a history of underage drinking, and had a previous license suspension).  Rather, a plaintiff must show that the incompetence is "pervasive" to establish a triable issue.  *Id*., citing *Bowlander v. Ballard*, No. S-02-029, 2003 WL 21299931 at *4 (Ohio Ct. App. June 6, 2003).

Cases which impute responsibility to a parent for the actions of their child generally involve a minor child.  *See, e.g., Huston v. Konieczny*, 52 Ohio St. 3d 214, 217 (1990) ("Parents may incur liability when they negligently entrust their child with an instrumentality (such as a gun or car)

which, because of the child's immaturity or lack of experience, may become a source of danger to others."); *Wery v. Seff*, 136 Ohio St. 307 (1940) (parents were negligent in entrusting their car to a 15-year-old child when local ordinance prohibited drivers under 16 from operating vehicles); *Elliott v. Harding,* 107 Ohio St. 501 (1923) (parents were negligent in entrusting their car to a 14-year-old child with no driving experience).  It is undisputed that the Driver in this case, while the daughter of the Defendant, was an adult with a valid driver's license at all relevant times.[9]  Although Plaintiff repeatedly refers to the familial relationship between the Defendant and the Driver, he offers no legal basis for his assertion that this relationship weighs as a factor in determining negligent entrustment.

Plaintiff's Response in Opposition to Summary Judgment cites two exhibits which were not, in fact, filed with his brief:[10] an insurance policy "that denied the safe driver discount to [the Driver] *before* this incident, resulting in an increase in the premium charged," and "the explanation of the insurance company . . . explaining that the denial of the safe driver discount was because of a history that does not allow a finding that [the Driver] *was a safe driver*."  (Doc. No. 96 at 7 (emphasis in original)).  Besides omitting any evidence to support these claims, Plaintiff does not assert that the

---

[9]     Possession of a valid driver's license is indicative of minimal competence, although it does not make the license holder *per se* competent. *M.M. v. M.F.*, No. 108957, 2020 WL 6342653 at *3 (Ohio Ct. App. Oct. 29, 2020), citing *Community Mut. Ins. Co. v. Kaczmarski*, 1998 WL 230489 at *3 (May 1, 1998).

[10]    Although Plaintiff described multiple exhibits in his brief, he did not file any of them, perhaps under the misapprehension that he needed permission to do so.  He cites no rule as the basis for this perceived restriction in filing exhibits.  The Court notes that Local Civil Rule 8.1 requires redaction of potentially sensitive information such as social security numbers, birth dates, financial account numbers and the names of minor children from public filings, but the Court is unaware of any rule which would prevent the Plaintiff from filing an exhibits such as described in his brief.

Driver's insurance was in the name of the Defendant, nor offer any evidence that Defendant paid the Driver's premiums, nor offer any other reason Defendant knew or should have known the safe driver discount was not applied.[11]

Plaintiff asserts that there is no need of such evidence, because the fact that the accident occurred is itself evidence that the Driver was incompetent and unskilled, under the doctrine of *res ipsa loquitor*.  (*Id*. at 12-14.)  For the application of the doctrine of *res ipsa loquitur* to apply, "a plaintiff must adduce evidence in support of two conclusions: (1) that the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed."  *CSX Transp., Inc. v. Exxon/Mobil Oil Corp*., 401 F. Supp. 2d 813, 818  19 (N.D. Ohio 2005), citing *Eannottie v. Carriage Inn of Steubenville*, 2003-Ohio-5310, ¶ 43 (Ohio Ct. App. 2003) "[t]he exclusive management of the occurrence must be in the control of the defendants and not in the control even partially of any other person or persons." *Eannottie*, 2003-Ohio-5310 at ¶ 43, quoting *Getch v. Bel  Park Anesthesia Assn*., No. 96 C.A. 84, 1998 WL 201452 at *3 (Ohio Ct. App. 7 Dist. Apr. 15, 1998). The court made clear that "if some other person or persons, other than the named defendants, had even partial control of the occurrence, the inference permitted by *res ipsa loquitur* would be improper."  *Id.*  Here, it is undisputed that Defendant, who

---

[11]     In contrast, Defendant offers her interrogatory responses from October 28, 2020, which state the Driver, not the Defendant, was the policyholder for the car insurance policy covering the vehicle involved in the accident, and "paid the monthly charges or period charges for her policy."  (Doc. No. 97-1 at 1-2.) These interrogatory responses reference an attached copy of the policy which was not included in the exhibit filed with the Court.

was not even present at the accident, did not have "exclusive management" of the car at the time of the occurrence at issue in this case.  Therefore, the doctrine of *res ipsa loquitur* is not applicable in this case.

When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery,* 11 Ohio St. 3d 75 (1984).  Although Plaintiff in this case is proceeding *pro se*, the more "liberal" pleading standard applicable to *pro se* litigants does not excuse his failure to produce any affirmative evidence in support of his Amended Complaint at this stage of the proceeding. The Federal Rules of Civil Procedure permit liberal notice pleading at the outset of the litigation because "[t]he provisions for discovery are so flexible" that, by the time a case is ready for summary judgment, "the gravamen of the dispute [has been] brought frankly into the open for inspection by the court." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 13, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (noting that the "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims") (citation and quotation marks omitted).  As the Sixth Circuit explained, "The liberal treatment of *pro se* pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105 at *3 (6th Cir. May 5, 2010) (citations omitted). The Sixth Circuit has also made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc*., 375 F. App'x 482, 485

13

(6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

In this case, Plaintiff failed to respond to Defendant's Motion for Summary Judgment with any specific evidence in the record which creates a genuine issue of material fact on critical elements of his claim for negligent entrustment: that the Driver was in fact an incompetent driver; and that the Defendant knew at the time of the alleged entrustment that the Driver was incompetent or unqualified to operate the vehicle, or had knowledge of such facts and circumstances as would imply knowledge on the part of the Defendant of such incompetency.  Instead, Plaintiff offers unsupported assertions.  Further, he failed to cite a single case providing any authority that the entrustment of a vehicle to someone with the Driver's alleged driving history constitutes negligence. Because he presents no affirmative evidence to defeat Defendant's Motion, Plaintiff's claim of negligent entrustment must fail, and Defendant's Motion for Summary Judgment on this claim is GRANTED.

**B.    Negligent Infliction of Emotional Distress**

Defendant next asserts that Summary Judgment is proper on Plaintiff's claim of negligent infliction of emotional distress because he has failed to show that he suffered "serious emotional distress" as a result of real physical danger arising from the accident.  (Doc. No. 80 at 5.)

Plaintiff did not address this issue in his Response in Opposition to Defendant's Motion for Summary Judgment, so Defendant's Motion for Summary Judgment on this issue is essentially unopposed.  The Sixth Circuit has held that a party may abandon claims by failing to address or support them in a response to a motion for summary judgment. *See, e.g., Clark v. City of Dublin*, Oh., 178 F. App'x 522, 524 25 (6th Cir. 2006) (finding that, when a plaintiff did not properly

14

respond to arguments asserted by a defendant's motion for summary judgment as to two claims, "the District Court did not err when it found that the Appellant abandoned [those] claims"); *Conner v. Hardee's Food Sys., Inc*., 65 F. App'x 19 (6th Cir. 2003) (finding that the plaintiffs had abandoned their claim "[b]ecause [they] failed to brief the issue before the district court"). However, the Court will nevertheless briefly address the merits of this claim.

Under Ohio law, a plaintiff can recover for negligent infliction of emotional distress where such injuries are both serious and reasonably foreseeable. *Paugh v. Hanks,* 6 Ohio St. 3d 72, 78 (1983). The Ohio Supreme Court has made clear that a serious emotional injury is a critical element of a claim for negligent infliction of emotional distress:

> In delineating the standards to guide Ohio courts in reviewing cases seeking damages for the negligent infliction of serious emotional distress, we wish to underscore the element of "seriousness" as a necessary component required for a plaintiff-bystander in order to sufficiently state a claim for relief. We view the standard of "serious" emotional distress as being a more reliable safeguard than an "ensuing physical injury" requirement in screening out legitimate claims. By the term "serious," we of course go beyond trifling mental disturbance, mere upset or hurt feelings. We believe that serious emotional distress describes emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case.

*Id.* at 765 (citations omitted). In *Paugh*, the Ohio Supreme Court extended the law to cover a mere bystander to the peril, but it required that the emotional distress be "severe and debilitating" to a reasonable person. *Id.* The court later held that a plaintiff may recover on a claim for negligent infliction of an emotional injury that does not meet the high evidentiary standard set forth in *Paugh*, if the plaintiff was directly involved in the negligent incident. *Binns v. Fredendall*, 32 Ohio St. 3d 244 (1987) (allowing plaintiff's claim for emotional injuries under the "traditional rule for recovery," requiring the tortfeasor to take his victim as he finds him, due to plaintiff's minor physical

15

injuries).  Thus, after *Binns*, a plaintiff may bring a claim for negligent infliction of emotional distress without meeting the "severe and debilitating" *Paugh* standard, if the plaintiff also suffered a contemporaneous physical injury. The physical injury, no matter how minor, provides some measure of proof that the plaintiff was actually exposed to the peril and was not a mere bystander. This "contemporaneous-physical-injury rule" requires a plaintiff to prove that the defendant's breach of duty caused his body physical damage as opposed to proving subsequent physical manifestations of emotional distress.  *Loudin v. Radiology & Imaging Servs., Inc.,* 185 Ohio App. 3d 438, 450 (9th Dist. 2009), *aff'd* 128 Ohio St. 3d 555 (2011).

In his Amended Complaint, Plaintiff asserts that "the instant [Plaintiff] saw [the Driver] turn her car directly into [Plaintiff's] left leg, he feared for his physical safety.  (Doc. No. 39-1 at 38.) He further asserts that medical records from his California-based healthcare providers provide "proof that his distress was both severe and debilitating and that a reasonable person in [Plaintiff's] situation would be unable to cope with the mental distress caused by the cascade of troubles visited upon him because of the negligence of this defendant." (*Id.* at 39.)  However, he does not offer any such records in support of his Response in Opposition Summary Judgment.  Although this Court, on October 28, 2020, granted Plaintiff's Motion to file medical records under seal,[12] there are no records which describe physical injuries attributed to the accident at issue in this case.[13]  Further,

---

[12]     The Court notes that the majority of the "medical records" filed under seal by the Plaintiff were publically available articles from medical journals, rather than medical records as represented by the Plaintiff.

[13]     The only medical records filed by the Plaintiff are a letter from a neuro-opthamologist dated August 11, 2020, recommending that Plaintiff be given additional time to accomplish reading tasks, and a letter from a San Diego medical practice, dated March 26, 2020, recommending that Plaintiff be permitted to withdraw from college course work without a grade due to  Plaintiff's

the only record which refers to mental stress attributes this stress to situational stressors including the difficulty of obtaining internet access to take online classes during the early days of the pandemic, which aggravated Plaintiff's underlying conditions of chronic kidney disease and cardiomyopathy. (Doc. Nos. 69, 72.) No medical or psychological records of the type described in Plaintiff's Amended Complaint have ever been presented to the Court.

Again, Plaintiff has failed to present any affirmative evidence to defeat Defendant's Motion for Summary Judgment, and therefore Plaintiff's claim of negligent infliction of emotional distress must fail. Defendant's Motion for Summary Judgment on this claim is GRANTED. Defendant has met her burden of showing there is no genuine issue of material fact, and she is entitled to summary judgment as a matter of law.

**C.     Punitive Damages**

A punitive damages claim cannot exist independently of the underlying claim for which it was brought, and therefore Plaintiff's claim for punitive damages cannot survive the dismissal of his underlying negligent entrustment and negligent infliction of emotional distress claims. *Niskanen v. Giant Eagle, Inc*., 122 Ohio St. 3d 486 (2009) (punitive damages are not recoverable unless there has been a verdict in the plaintiff's favor on the issue of compensatory damages); *Moskovitz v. Mt. Sinai Med. Ctr*., 69 Ohio St. 3d 638, 650 (1994) (punitive damages are awarded as an incident to the cause of action from which they are sought; compensable harm must be found before punitive damages may be considered). Plaintiff's punitive damages claim must also be dismissed

---

underlying conditions of chronic kidney disease and cardiomyopathy, and "the increasing emotional stress caused by his courses." (Doc. No. 72.) Neither letter references the accident at issue in this case.

17

### D.        Ownership of the Vehicle

The Parties have a substantive factual dispute regarding ownership of the Driver's car. Defendant asserts that the car involved in the accident was not owned by Defendant, at the time of the automobile accident, and was, instead personally owned by the non-party driver.  (Doc. No. 80 at 2.)  Plaintiff acknowledges that "absence of ownership of the entrusted vehicle is a complete defense," but asserts that because the Defendant asserted in an affidavit in support of her first Motion for Summary Judgment that she was the owner of the car involved in the accident, the Court should either invoke judicial estoppel to rule that Defendant was the owner of the car, or hold an evidentiary hearing to resolve the apparent conflict of evidence.  (Doc. No. 86 at 2-3.)  The Court finds that an evidentiary hearing is not necessary because summary judgment is proper even though the issue of ownership of the car cannot be resolved on the record before the Court.

Plaintiff relies heavily on the Ohio Supreme Court's opinion in *Byrd v. Smith*, which addressed the certified question: "What is the extent to which a court must give weight to an affidavit that is supplemental to, inconsistent with, or contradictory to earlier testimony, and can such an affidavit create a genuine issue of material fact?"  *Byrd v. Smith*,  110 Ohio St.3d 24, 28 (2006).  The *Byrd* court explained

> in response to the certified question, we answer that when an inconsistent affidavit is presented in support of, or in opposition to, a motion for summary judgment, a trial court must consider whether the affidavit contradicts or merely supplements the affiant's earlier sworn testimony.  A movant's contradictory affidavit will prevent summary judgment in that party's favor.  A nonmoving party's contradictory affidavit must sufficiently explain the contradiction before a genuine issue of material fact is created.

*Id.* at 30-31. The *Byrd* ruling is consistent with the sham affidavit doctrine articulate by the Sixth Circuit in *Reid v. Sears, Roebuck & Co.*, which prevents nonmoving parties from creating an issue

18

of material fact to defeat summary judgment by filing affidavits that contradict their own earlier deposition testimony. *Reed v. City of Memphis, Tennessee*, 735 F. App'x 192, 197 (6th Cir. 2018), citing *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). The Sixth Circuit later expanded the sham affidavit doctrine to permit courts to disregard "an affidavit from one defendant, which directly contradicts his prior sworn testimony, submitted by the plaintiffs to defeat summary judgment motions from other defendants." *Id., citing France v. Lucas*, 836 F.3d 612, 623  24 (6th Cir. 2016).

Both *Byrd* and *Reid* address a situation that is distinct from the issue here.  Although *Byrd* mentions a "movant's contradictory affidavit," these cases both considered affidavits submitted by the party opposing summary judgment, who were creating an issue of material fact to defeat summary judgment by filing affidavits that contradicted their own earlier deposition testimony.  In this case, there is no deposition testimony, but there are two contradictory affidavits,[14] both submitted by the party moving for summary judgment.

Neither party cites case law analogous to the situation in this case.  However, case law

---

[14]  The Court does not consider the difference between affidavits and deposition testimony to be significant in this situation.  The Ohio Court of Appeals has applied the doctrine set forth in *Byrd* when a non-moving party submits "more recent deposition testimony to contradict prior deposition testimony, at least absent some plausible explanation for the contradiction."  The court explained that:

> In reaching this conclusion, we note that affidavits and depositions are similar insofar as they both involve sworn statements. One obvious difference between the two is that an affidavit is written whereas a deposition involves oral testimony. For purposes of contradicting prior testimony, however, we find this distinction to be immaterial.

*Carnes v. Gordon Food Serv.*, No. 06-CA-86, 2007 WL 1429627 at *5 (Ohio Ct. App. May 11, 2007). The Court believes that same reasoning permits the *Byrd* or *Reid* doctrines to be applied to conflicting affidavits in the summary judgment context.

19

applying *Byrd* emphasizes the importance of considering "the explanation for the inconsistency or contradiction" in an inconsistent affidavit.  For example, in a case asserting that an affidavit submitted in support of a Motion for Summary Judgment was improper under Ohio Rule of Civil Procedure 56(E), the state appellate court held:

> However, we find Appellant's reliance on *Byrd* misplaced in this case. In *Byrd*, the appellate court rejected the inconsistent affidavit without considering *Byrd*'s explanation for the inconsistency or contradiction.

*Nott v. Stegall,* No. 2-18-04, 2018 -Ohio- 4471, 2018 WL 5793244 at *5 (Ohio Ct. App. 3 Dist. Nov. 5, 2018).  The Sixth Circuit is also clear that "A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction. *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006), citing *Miller v. A.H. Robins, Co.*, 766 F.2d 1102, 1104 (7th Cir. 1985) (setting forth instances in which "an inconsistent affidavit may preclude summary judgment").  For example, the Sixth Circuit agreed with a Seventh Circuit decision holding that "An inconsistent affidavit may preclude summary judgment . . . if the affiant was confused at the deposition and the affidavit explains those aspects of the deposition testimony or if the affiant lacked access to material facts and the affidavit sets forth the newly-discovered evidence."  *Miller*, 766 F.2d at 1104.

Here, the Defendant does not offer an explanation for her inconsistent affidavits, nor even acknowledge the inconsistency.  She offers no evidence of ownership besides her contradictory affidavits and a reference to an insurance policy "that was produced to Plaintiff at the start of this litigation," but was not provided to this Court.  (Doc. No. 97 at 1.)  However, this policy was not presented to the Court.  Therefore, the issue of ownership of the car is an unresolved factual dispute.  However, because summary judgment in favor of Defendant is proper even if the ownership issue

20

were to be resolved in Plaintiff's favor, it is not material, and does not preclude the entry of summary judgment in this case.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. at 248 (Factual disputes that are irrelevant or unnecessary will not preclude the entry of summary judgment).

### V. Conclusion

Accordingly and for all the reasons set forth above, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Partial Summary Judgment is DENIED.


**IT IS SO ORDERED.**


Date: March 26, 2021                                         *s/Jonathan D. Greenberg*
                                                             Jonathan D. Greenberg
                                                             U.S. Magistrate Judge